FILED

MAR 21 2005

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| *Plaintiff,* | ) |
|  | ) Civil Action No. 1:05-0234 |
| v. | ) |
|  | ) Filed: |
| BLUEFIELD REGIONAL MEDICAL | ) |
| CENTER, INC. and | ) |
| PRINCETON COMMUNITY HOSPITAL | ) |
| ASSOCIATION, INC., | ) |
|  | ) |
| *Defendants.* | ) |

## COMPLAINT

The United States of America, by its attorneys and acting under the direction of the Attorney General of the United States, brings this civil antitrust action to obtain equitable relief against defendants Bluefield Regional Medical Center, Inc. and Princeton Community Hospital Association, Inc. The United States alleges as follows:

### I. INTRODUCTION

1. On January 30, 2003, Defendants entered into an agreement that restricts Bluefield Regional Medical Center, Inc. from offering certain cancer services and a related agreement that restricts Princeton Community Hospital Association, Inc. from offering certain cardiac-surgery services. The two agreements (the "Cancer and Open-Heart Agreements") have the effect of unreasonably restraining competition and allocating markets for cancer and cardiac-surgery services to the detriment of consumers. The United States, through this suit, asks this court to enjoin defendants from enforcing these agreements and taking other actions that would restrain competition and injure consumers in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

## II. DEFENDANTS

2. Bluefield Regional Medical Center, Inc. (BRMC) is a nonprofit corporation, organized and existing under the laws of the State of West Virginia, with its headquarters in Bluefield, Mercer County, West Virginia. BRMC owns and operates a 265-bed general acute-care hospital in Bluefield, West Virginia. BRMC transacts business and offers health-care services to patients located in the Southern District of West Virginia.

3. Princeton Community Hospital Association, Inc. (PCH) is a nonprofit corporation, organized and existing under the laws of the State of West Virginia, with its headquarters in Princeton, Mercer County, West Virginia. PCH owns and operates a 211-bed, general acute-care hospital in Princeton, West Virginia and St. Luke's Hospital, LLC (St. Luke's), a 79-bed, general acute-care hospital in Bluefield, West Virginia. PCH transacts business and offers health-care services to patients located in the Southern District of West Virginia.

## III. JURISDICTION AND VENUE

4. The United States brings this action to prevent and restrain Defendants' continuing violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. The Court has subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 4 and 28 U.S.C. §§ 1331, 1337, and 1345.

5. Defendants transact business and have committed the unlawful acts at issue in West Virginia. Consequently, this Court has jurisdiction over Defendants, and venue is proper in this District pursuant to 28 U.S.C. § 1391(c) and 15 U.S.C. § 22.

## IV. EFFECTS ON INTERSTATE COMMERCE

6. BRMC and PCH provide health-care services to individuals who reside outside of West Virginia. In addition, each hospital contracts with managed-care and health-insurance providers located outside West Virginia to be included in their networks. These individuals and businesses remit substantial payments to BRMC and PCH. Both hospitals are engaged in, and their activities substantially affect, interstate commerce.

## V. FACTS

7. At all times relevant to the matters alleged in this Complaint, BRMC and PCH have been significant competitors in general acute-care hospital services and in cancer services. PCH is located about fifteen miles from BRMC. PCH's St. Luke's Hospital is located about two

miles from BRMC. BRMC, PCH, and St. Luke's are the only general acute-care hospitals in Mercer County.

8. At all times relevant to the matters alleged in this Complaint, BRMC and PCH have been potential competitors in cardiac-surgery services. As discussed below, BRMC sought to offer cardiac-surgery services since at least 1999. Similarly, from at least 1999 until PCH agreed not to compete with BRMC in cardiac-surgery services, PCH sought to offer cardiac-surgery services by working with other hospitals in southern West Virginia.

9. The State of West Virginia and the Commonwealth of Virginia require that a hospital obtain a certificate of need or a certificate of public need (collectively, "CON") from a state agency before a hospital may provide either cardiac-surgery services or radiation-therapy services (using a linear accelerator) for treating patients with cancer. The West Virginia Health Care Authority (WVHCA) administers the certificate-of-need program in West Virginia. The Virginia Department of Health's Certificate of Public Need Division and regional health planning agencies administer the certificate-of-public-need program in Virginia.

10. At all times relevant to the matters alleged in this Complaint, BRMC has held a CON to operate radiation-therapy equipment in Bluefield, West Virginia, and PCH has not held a similar radiation-therapy CON.

11. In January 1999, BRMC submitted a CON application to the WVHCA to develop a cardiac-surgery program in Mercer County, West Virginia. At that time, neither BRMC, PCH, nor St. Luke's had a CON to operate a cardiac-surgery program. PCH, St. Luke's, and other hospitals opposed BRMC's application. PCH and St. Luke's argued, in part, that BRMC's application should be denied because it did not provide a role for PCH and St. Luke's in the provision of cardiac-surgery services in southern West Virginia.

12. In February 2000, the WVHCA issued a written decision that denied BRMC's application for a certificate of need to develop a cardiac-surgery program because BRMC was unable to show that, without working with other hospitals, it would be able to attract a sufficient number of patients. In the decision, the WVHCA went on to write that PCH, St. Luke's and other hospitals had:

> failed to successfully negotiate with [BRMC] to reach a shared goal. The goal being to provide advanced cardiology services to the citizens of southern West Virginia and southwestern Virginia. . . . [The WVHCA] would have preferred that the parties work together to present a project that could have been approved under the existing law. Instead, the parties fought among themselves, failed to resolve their differences, and in return, the citizens of southern West Virginia will be inconvenienced and suffer by not having a regional open-heart service provider.

13. In the February 2000 decision, the WVHCA did not encourage or instruct BRMC and PCH to allocate markets for cardiac-surgery and cancer services.

14. On one or more occasions during 2002, BRMC and PCH representatives met with WVHCA officials. The WVHCA officials encouraged BRMC and PCH to reach an understanding that would enable the parties to submit an application for an open-heart surgery CON that the WVHCA would be able to approve. The WVHCA officials did not instruct nor encourage BRMC and PCH to allocate markets.

15. On January 30, 2003, BRMC and PCH entered into the Cancer and Open-Heart Agreements. The Cancer Agreement related to PCH's provision of certain cancer services, including radiation-therapy services. The Open-Heart Agreement related to BRMC's plan to develop cardiac-surgery services (open-heart surgery and therapeutic cardiac-catheterization services).

16. The Cancer and Open-Heart Agreements applied to a geographic region that consisted of McDowell, Mercer, Monroe, Raleigh, Summers, and Wyoming counties in southern West Virginia and Bland, Giles, and Tazewell counties in western Virginia.

17. In the Cancer and Open-Heart Agreements, BRMC agreed to submit a joint CON application with PCH to transfer BRMC's CON to operate radiation-therapy equipment to PCH, and PCH agreed to submit a joint CON application with BRMC for BRMC to receive a cardiac-surgery CON.

18. In the Agreement relating to cancer services, BRMC agreed to refrain from competing with PCH in various ways, none of which was related to a procompetitive purpose. BRMC agreed, among other things:

   (a)  not to apply for, finance, encourage, or participate in a CON to provide cancer services by itself or with any entity other than PCH;

   (b)  that, in the event that the State of West Virginia or the Commonwealth of Virginia no longer requires a CON to provide cancer services, BRMC would not develop, finance, encourage, participate in, or support the development or provision of cancer services by BRMC or any entity other than PCH;

   (c)  not to engage in, support, finance, encourage, or participate in the recruitment of any physician cancer specialists to BRMC's medical staff or for any other entity or individual, other than PCH;

   (d)  to provide to PCH information relating to cancer services provided by BRMC;

 (e) not to market or advertise that BRMC has a cancer center;

 (f) not to provide outpatient chemotherapy services (except for those services ordered or performed by either of two physicians currently practicing at BRMC);

 (g) not to lease space in its existing or future medical office buildings to any cancer specialists, except for those cancer specialists leasing space as of the date of the agreement; and

 (h) that, in the event that any new technology or modality for the diagnosis or treatment of cancer becomes available that is not offered generally at hospitals similar to PCH and BRMC, BRMC would not acquire, develop, offer or provide such technology or modality, and BRMC would not finance, encourage, participate in, or support the development or offering of such technology or modality by any entity other than PCH.

19. In the Agreement relating to cardiac-surgery services, PCH agreed to refrain from competing with BRMC in various ways, none of which was related to a procompetitive purpose. PCH agreed, among other things:

 (a) not to apply for, finance, encourage, or participate in a CON to provide cardiac-surgery services by itself or with any entity other than BRMC;

 (b) that, in the event that the State of West Virginia or the Commonwealth of Virginia no longer requires a CON to provide cardiac-surgery services, PCH would not develop, finance, encourage, participate in, or support the development or provision of cardiac-surgery services by PCH or any entity other than BRMC;

 (c) not to engage in, support, finance, encourage, or participate in the recruitment of any cardiac-surgery specialists to PCH's medical staff or for any other entity or individual, other than BRMC;

 (d) to provide to BRMC information relating to cardiac services provided by PCH;

 (e) not to solicit, entertain, finance, aid, support, or participate in any competing proposal from any entity or physician to develop cardiac-surgery services;

 (f) not to lease space in its existing or future medical office buildings to any open-heart surgery specialist; and

 (g) that, in the event that any new technology or modality for the diagnosis or treatment of cardiovascular disease becomes available that is not offered generally

at hospitals similar to PCH and BRMC, PCH would not acquire, develop, offer or provide such technology or modality, and PCH would not finance, encourage, participate in, or support the development or offering of such technology or modality by any entity other than BRMC.

20. The term of the Cancer and Open-Heart Agreements commenced on the date of execution, January 30, 2003, and terminates five years after the first open-heart surgery is performed at BRMC or the first cancer patient is treated at a PCH comprehensive cancer center, whichever is later. Neither agreement can last longer than eight years. Each agreement automatically terminates if, within three years from commencement, either party has not received all government approvals needed to provide its respective services.

21. PCH and BRMC structured the Cancer and Open-Heart Agreements such that PCH would independently own its cancer-treatment facilities and provide its cancer services independently of BRMC, BRMC would independently own its cardiac-surgery facilities and provide its cardiac-surgery services independently of PCH, and BRMC and PCH would not provide these services as part of a joint venture.

22. On January 23, 2003, BRMC submitted to the WVHCA a CON application, with PCH as a joint applicant, to develop a cardiac-surgery program at BRMC. The WVHCA approved BRMC's cardiac-surgery CON application on August 1, 2003.

23. On July 30, 2003, PCH submitted to the WVHCA an application, with BRMC as a joint applicant, to transfer BRMC's CON to operate radiation-therapy equipment to PCH. PCH's application to transfer BRMC's radiation-therapy equipment CON to PCH remains pending with the WVHCA.

24. The WVHCA did not issue a decision approving the Cancer and Open-Heart Agreements, nor do the laws of West Virginia empower the WVHCA to authorize or require that hospitals, like BRMC and PCH, enter into market-allocation agreements such as the Cancer and Open-Heart Agreements.

25. The WVHCA did not exercise any ongoing review or supervision of the Cancer and Open-Heart Agreements, nor do the laws of West Virginia empower the WVHCA to exercise any ongoing review or supervision of market-allocation agreements such as the Cancer and Open-Heart Agreements.

26. BRMC and PCH never sought or received approval for the Cancer and Open-Heart Agreements from the Commonwealth of Virginia. No agency or official representing the Commonwealth of Virginia ever encouraged BRMC and PCH to reach an understanding or agreement concerning cardiac-surgery or cancer services.

## VI. VIOLATION ALLEGED

27. The United States incorporates paragraphs 1 through 26.

28. The Defendants' Cancer and Open-Heart Agreements constituted an agreement, understanding, and concert of action that allocated markets and customers for cancer and cardiac-surgery services between themselves in a nine-county area in southern West Virginia and western Virginia. The Defendants' Cancer and Open-Heart Agreements have unreasonably restrained interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

29. Pursuant to the Cancer and Open-Heart Agreements, Defendants have refrained and will likely continue to refrain from competing to serve patients that need cancer and cardiac-surgery services. The Cancer and Open-Heart Agreements have had and will likely have the following harmful effects:

(a) Managed-care purchasers, their enrollees and employees, and other patients in southern West Virginia and western Virginia have been denied and will be denied the benefits of price competition between PCH and BRMC;

(b) The quality of services has decreased and will likely decrease in the absence of competition between PCH and BRMC to provide cancer and cardiac-surgery services;

(c) Patients have lost and will lose the ability to choose between PCH and BRMC when selecting a hospital to provide cancer services;

(d) Patients have lost and will lose the benefit of potential competition between PCH and BRMC in cardiac-surgery services; and

(e) PCH's and BRMC's incentives to innovate or offer new cancer and cardiac-surgery services have been and will be decreased.

## VII. REQUEST FOR RELIEF

30. The United States requests that:

(a) the Court declare the Cancer and Open-Heart Agreements between the Defendants to be a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

(b) the Court enter an order enjoining the Defendants from

      (1)     enforcing the Cancer and Open-Heart Agreements;

      (2)     entering into, continuing, maintaining, or enforcing any agreement to allocate any cancer or cardiac-surgery service, market, territory, or customer;

      (3)     entering into, continuing, maintaining, or enforcing any agreement that

            (i)     prohibits or restricts a health-care facility from obtaining a certificate of need relating to cancer services or cardiac surgery or

            (ii)     otherwise prohibits or restricts a health-care facility from taking actions related to providing cancer services or cardiac surgery; and

      (4)     entering into, continuing, maintaining, or enforcing any agreement with each other concerning cancer services or cardiac surgery without prior notice to and approval of the United States; and

(c)     the United States have such other relief as the Court may deem just and proper to redress, and prevent recurrence of, the alleged violation and to dissipate the anticompetitive effects of the Defendants' actions.

Dated: March 21, 2005

FOR THE PLAINTIFF
UNITED STATES OF AMERICA

*/s/*

R. HEWITT PATE
Assistant Attorney General

*/s/*

J. BRUCE McDONALD
Deputy Assistant Attorney General

*/s/*

DOROTHY B. FOUNTAIN
Deputy Director of Operations

*/s/*

MARK J. BOTTI
Chief, Litigation I

*/s/*

PETER J. MUCCHETTI
JOAN S. HUGGLER
MITCHELL H. GLENDE
Attorneys for the United States
Antitrust Division
United States Department of Justice
1401 H Street, N.W., Suite 4000
Washington, D.C. 20530
Telephone: (202) 353-4211
Facsimile: (202) 307-5802

KASEY WARNER
United States Attorney

By: */s/*

STEPHEN M. HORN
Assistant United States Attorney